(No. 77-CC-2037—

McDonnell Douglas Automation Company, Claimant, *v.* The State of Illinois, Respondent.

*Opinion filed July 7, 1983.*

Gillespie, Cadigan & Gillespie (Patrick Cadigan, of counsel), for Claimant.

Neil F. Hartigan, Attorney General (William E. Webber, Assistant Attorney General, of counsel), for Respondent.

Roe, C.J.

Claimant, McDonnell Douglas Automation Company (McAuto) comes before this Court seeking recovery for services rendered pursuant to a contract with the Secretary of State's Data Processing Department. A hearing on this matter was held before Commissioner Parsons on November 30, 1979. It is the Court's opinion that Claimant, McAuto, be awarded $44,925.57 as consideration for the data entry work it performed.

It appears that on or about May 26, 1977, Alex Martinegro, a regional marketing manager for McAuto, met with representatives of the Secretary of State's office. The representative informed Martinegro that the Data Processing Department was overburdened with a large backlog of data entry work that required urgent completion. Since the Department's usual vendors could not handle the volume, McAuto's assistance was needed in reaching a July 12 deadline.

On June 7, the parties agreed to a contract, the terms of which seemed well suited to the particular exigencies confronting the parties. The most troublesome provision

for the parties to agree upon was the means of ascertaining the consideration that the State would provide. The Secretary of State's office customarily used a "per stroke" method whereby a certain amount was paid for each letter converted. McAuto was reluctant to agree to a method that hinged upon quantity of output. They stressed that before acceding to that type of arrangement, a lengthy analysis would have to be undergone to determine exactly what price "per stroke" would be acceptable. This however, would be time consuming and frustrate the Department's goal of quick completion.

Alternatively, McAuto proposed a time and materials contract. The terms provided that McAuto's costs would be compensable at fixed rates irrespective of their rate of production. In response to the Department's inquiries as to rate of production, McAuto stated that on an easy job they could average 6,500 strokes per hour. Upon this assumption, the Department expressly agreed to compensate McAuto on a time and materials basis. Yet, sensitive to binding itself to a contract with a party with whom it had not before done business, and in light of its accepting McAuto's pricing mechanism, the Department added Clause 15 to the contract:

"It is assumed that McAuto will average 6,500 strokes per hour. If McAuto does not, the State has the right to cancel the contract."

Evidently the State sought to leave itself an out should there arise dissatisfaction with McAuto's rate of production. In fact, due to the following circumstances, the Court's decision turns on construing this vital provision.

The seven weeks following June 7 were marked by concern and confusion over McAuto's rate of production. Communication between the parties was fairly regular. McAuto consistently voiced its concern to the Data Processing Department that work was not going as fast

as the parties had planned. It is noteworthy that the Department continuously encouraged McAuto, apparently convinced that efficiency would increase as time progressed. Alex Martinegro's unchallenged testimony is illustrative of the point:

"We were told not to get discouraged; that this is in fact as easy job . . . that as you do it over a period of time, they have found with their other vendors that it becomes much easier. And we were told to continue progress and to attempt to keep them informed . . . ."

Only at one point, on July 14, did McAuto represent that the results being attained were parallel to those envisioned at the time of contract. Soon thereafter, however, McAuto realized that their pace was, as before, half as fast as the parties had anticipated. Faced with this, on July 26, the Data Processing Department cancelled the contract pursuant to the aforementioned Clause 15. The Department's letter stated that cancellation was necessary because McAuto had not averaged over 6,500 strokes per hour as the contract "required".

What must be determined in this case is how much the Data Processing Department owes McAuto. Although the State of Illinois asserts in its brief that McAuto breached the contract, with an air of magnanimity it offers $19,205.95 as a fair settlement. The State says when a party breaches a contract "they have no right to claim compensation as if the contract had not been breached" and that "a party breaching a contract has no right to recover under the contract". However applicable these legal principles are in other circumstances, here they are inapposite and the State's analysis and settlement must be disregarded.

The State's analysis misconstrues the plain meaning of Clause 15 and ignores the reason for which it was inserted. This is evidenced by the language in the Data Processing Department's letter referring to the "required"

rate of 6,500 strokes per hour. The only sense in which the 6,500 strokes per hour rate was a requirement was as a necessary condition prior to cancellation. The rate was clearly not a guarantee, the failure of which to meet, constituted a breach. Nowhere is the word "breach" mentioned. In fact, the circumstances that gave rise to the contract indicate that the rate was a target or a standard that the parties hoped McAuto could meet. If the rate was not met, the State had the option to minimize its dissatisfaction and terminate the relationship. Thus, when the Department did become unhappy with McAuto's progress, they acted in accordance with the contingency expressly provided for. They simply released themselves from further obligation. The clause did not, however, allow the Department to renege on payments for work already performed. Furthermore, it is well-settled contract law in Illinois that in construing conditions inserted in a contract for the benefit of the party who made them, where the clause is ambiguous, the construction will be adopted which is least favorable to the party drafting it. (*Richmond v. Brandt* (1905), 118 Ill. App. 624.) Thus, even if the clause's plain meaning and the surrounding circumstances weren't clearly dispositive, the Data Processing Department would still bear the onus of the faulty draftsmanship.

"In construing a contract, and determining the intention of the parties, the instrument should be read and considered as a whole, and the meaning of particular language may be enlarged or limited according to the true intent of the parties as made manifest by the various provisions of the contract as a whole." (*Illinois Law and Practice*, sec. 215 Contracts, pp. 372-73, and cases cited therein). In applying this fundamental principle, the Court finds that McAuto correctly determined the amount due it. Item 12 of the contract states that upon termina-

tion of the contract, the customer must pay all charges. Item one states that all charges are to be determined on a time and materials basis. Individual costs are itemized on page two. Using these figures, the amount due McAuto can be determined as follows:

Data Entry 4734.7 hours x    8.95 per/hour $42,375.51
Card Load    25.5 hours x 100.00 per/hour    2,550.00
                          Amount Due ...... $44,925.57

It is hereby ordered that the claim be granted in the amount of $44,925.57.